IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN RAMSEY, et al., | |
| Plaintiffs, | 4:11-CV-3211 |
| vs. | |
| SPRINT COMMUNICATIONS COMPANY, L.P., et al., | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the plaintiffs' Motion for Final Approval of Class-Action Settlement and for Award of Attorneys' Fees and Expenses to Settlement Class Counsel and Incentive Compensation to Class Representatives (filing 36). Having heard the statements of counsel at a fairness hearing, and reviewed and considered the entire record, the Court will grant the motion in its entirety.

BACKGROUND

This action was filed on November 23, 2011, and the settlement agreement at issue was executed by the parties on January 13, 2012. *See* filings 1 and 20-1. The parties filed a joint motion, pursuant to Fed. R. Civ. P. 23(b) and (e), to certify the settlement class, preliminarily approve the settlement agreement, and approve the form and manner of notice to the class. Filing 18. In an order entered March 15, 2012, the Court granted that motion, finding, among other things, that this action could be maintained as a class action; that the prerequisites to class certification under Rule 23(a) had been satisfied; and that certification of the settlement class was superior to other available methods for the fair and efficient resolution of this controversy, satisfying Rule 23(b)(3). Filing 33. The Court designated class representatives, appointed settlement class counsel and a claims administrator, and scheduled a fairness hearing. Filing 33. And the Court reviewed the forms of notice submitted by the parties, approved them as to form, and approved their plan for directing notice to the class members, finding that their plan provided the best notice practicable under the circumstances and was in compliance with Rule 23 and the requirements of due process. Filing 33.

Notice was mailed to identified class members on July 31, 2012, giving the class members until September 14, 2012, to request exclusion from the class or object to the settlement. Filings 35 and 38-1. Notices were also published in accordance with the Court's order. Filing 38-1. No objections to the settlement agreement were received by the claims administrator or the Court. *See* filing 38-1. On October 23, the present motion to approve the settlement agreement and award attorney fees and incentive compensation was filed, along with a brief and index of evidence in support. Filings 36, 37, and 38. The scheduled fairness hearing was held on November 20, at which no class members or other objectors appeared. The Court requested additional evidence supporting the proposed award of attorney fees, and that evidence was submitted on November 28. Filing 42.

For purposes of the discussion below, when terms are used that are expressly defined in the settlement agreement, they are intended to have the same meaning as in the settlement agreement.

SETTLEMENT AGREEMENT

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Rule 23(e). Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *In re BankAmerica Corp. Secs. Litig.*, 350 F.3d 747, 751 (8th Cir. 2003); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). If the proposed settlement would bind the class members, the Court may approve it only after a hearing and upon finding that it is fair, reasonable, and adequate. Rule 23(e)(2). But a class action settlement is a private contract negotiated between the parties. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 934. Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 934.

In this case, the Court finds that the appointed class representatives and their counsel fairly and adequately represented the interests of the class members in connection with the settlement agreement, and that the class representatives and the settling defendants were represented by able and experienced counsel. *See* filings 38-10 and 38-11. The settlement agreement was the product of good-faith, arm's-length negotiations by the class representatives, settling defendants, and their respective counsel. *See* filings 19 and 38-10.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members, including the published notice and individual notices to identified class members, were adequate and reasonable and constituted the best notice practicable under the circumstances, satisfying Rule 23(c)(2)(B). By virtue of the fact that an action maintained as a class suit under Rule 23 has res judicata effect on all members of the class, due process requires that notice of a proposed settlement be given to the class. *Grunin*, 513 F.2d at 120. The notice given must be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id.* In addition, the notice must reasonably convey the required information and it must afford a reasonable time for those interested to make their appearance. *Id.* The contents must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. *Id.* at 122.

The notice given in this case met those requirements; it informed the class members of the action and their options, accurately characterized all the pertinent terms of the settlement agreement (including attorney fees and expenses), and afforded the class members a reasonable opportunity to object. As established in the Court's preliminary order approving notice, notices were sent directly to property owners who could be identified, and notices by publication were also provided identifying a website where further information could be obtained. The record establishes that the direct notices were sent and the publications were performed. In short, the notice satisfied the requirements of Rule 23 and due process.

The Court also finds that the settlement agreement is fair, reasonable, adequate, and in the best interests of class members. In assessing whether a settlement is fair, reasonable, and adequate, the most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. *See, Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 648 (8th Cir. 2012); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 933; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999); *Grunin*, 513 F.2d at 124. In addition, the Court considers such factors as the defendants' overall financial condition and ability to pay; the complexity, length, and expense of further litigation; and the amount of opposition to the settlement. *Grunin*, 513 F.2d at 124*; see also, Zalewski*, 678 F.3d at 648; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932; *Petrovic*, 200 F.3d at 1150.

If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit

inuring to the class would be better than the prospect of an ultimately unsuccessful litigation. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995). But this Court has neither the duty nor the right to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *Grunin*, 513 F.2d at 123. In examining a proposed settlement for approval or disapproval, the Court does not try the case; the very purpose of a compromise is to avoid the delay and expense of a trial. *Id.* at 124.; *see also DeBoer*, 64 F.3d at 1178. The views of the parties to the settlement must also be considered; the fact that only a handful of members object to the settlement weighs in its favor. *DeBoer*, 64 F.3d at 1178.

In this case, the Court notes that it is not unfamiliar with the underlying controversy and its merits. *See Whipps Land & Cattle Co., Inc. v. Level 3 Comm'ns, LLC*, 658 N.W.2d 258, 264 (Neb. 2003). Without opining directly on the merits of the plaintiffs' claims, the Court observes that when weighing the settlement amount against the strength of the case for the plaintiffs on the merits, the plaintiffs faced at least the risk of recovering nothing. The Court also observes that the property interests at issue here are for the most part not possessory interests, because they are physically coextensive with railroad rights-of-way. The plaintiffs were not in a very good position to actually enjoy any use of the property, and whatever reversionary interests they might retain rest on contingencies that are, at best, speculative. Simply put, cash compensation for an easement over property that was already mostly under railroad tracks isn't a bad deal.

The remaining factors relevant to the fairness of the settlement are either neutral or weigh in favor of the settlement. There is no evidence in the record calling into question the defendants' overall financial condition and ability to pay. *Compare, e.g., Zalewski*, 678 F.3d at 648. The complexity, length, and expense of further litigation weigh in favor of settlement; this litigation is over a decade old and, should this settlement be rejected, there is no telling what it would take to get it to trial, or how the issues presented at that trial would be litigated. And the amount of opposition to the settlement weighs in favor of it; while a handful of plaintiffs have opted out of the settlement class, no one has actually objected to the settlement.

Based on the foregoing, the Court finds that the settlement agreement is fair, reasonable, and adequate within the meaning of Rule 23(e)(2), and will approve it.

## ATTORNEY FEES AND EXPENSES

In a certified class action, the Court may award reasonable attorney fees and non-taxable costs that are authorized by the parties' agreement. Rule 23(h). Settlement class counsel has moved for an award of fees and

expenses pursuant to Fed. R. Civ. P. 54(d)(2). The following are the findings of fact and conclusions of law required of the Court by Rule 23(h)(3) and Fed. R. Civ. P. 52(a).

The Court bears the responsibility of scrutinizing attorney fee requests, and the burden rests with counsel to establish a factual basis to support the award. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). Courts utilize two main approaches to analyzing a request for attorney fees. *Id.* at 244. Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. *Id.* Another method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. *Id.* at 244-45. The percentage-of-the-benefit method is recommended in common-fund cases. *Id.* It is well established that the Court may use the percentage-of-the-benefit method to evaluate attorney fees in a common-fund settlement, and it is within the Court's discretion to choose which method to apply. *See, In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Petrovic,* 200 F.3d at 1157; *Johnston,* 83 F.3d at 245. In addition, even when using the percentage-of-the-benefit method, use of a lodestar approach is sometimes warranted to double-check the result of the percentage-of-the-benefit method, particularly where there is some indication that the award is overly generous. *See Petrovic*, 200 F.3d at 1157. But a lodestar analysis is not necessary if the fee does not seem excessive as a percentage of the recovery. *See id.*

The settlement agreement permits settlement class counsel to move for attorney fees and expenses in an amount not to exceed $1,107,000. Filing 20-1 at 4, 14. They have moved for that amount, arguing that

> [u]nder the percentage-of-the-fund approach, the agreed-to attorney's-fee request is reasonable as a matter of law. Here, Settlement Class Counsel now estimate that, based on the miles of rights of way covered by the Settlement, if each class member were to claim the available cash benefits, approximately $2,412,677 would be paid to qualifying class members, assuming that no land-grant class members seek the higher non-land grant benefits. (To the extent those class members do seek and receive the higher amounts, the amount available to the class will increase.) When estimated administrative costs of $682,000—to be borne by the Settling Defendants—and the agreed-to attorneys' fees and expenses of $1,107,000—also to be paid

- 5 -

> separately by the Settling Defendants—are factored in, the gross value of the Settlement is approximately $4,201,677. The $1,107,000 fee-and-expense award therefore now represents 26 percent of the fund as a whole.

Filing 37 at 6-7.

The record does not contain the information that would be necessary to duplicate settlement class counsel's estimate of the available settlement funds to the last penny. But an exhibit to the settlement agreement itself describes the settlement corridors in some detail, *see* filing 20-1 at 38-41, and the Court's own calculations based on that information are generally consistent with settlement class counsel's representation of the available settlement funds.[1] The Court accepts counsel's estimate for purposes of establishing the value of the common fund, and agrees that the attorney fees requested here are a reasonable fraction of the common fund. *Compare, e.g.*, *In re U.S. Bancorp. Litig.*, 291 F.3d 1035; *Petrovic*, 200 F.3d 1140. The Court is aware that the separate negotiation of attorney fees, and the settling defendants' agreement not to contest fees up to a point, may present an opportunity for abuse. *See Johnston*, 83 F.3d at 246 n.11. But the Court finds no basis to suspect any abuse or collusion here. The length and complexity of this litigation, and its associated risks, also weigh in favor of the fee award.

Class counsel also suggest that the Court perform a lodestar cross-check. But the Court is not able to do so based upon the evidence submitted. The standards to be considered in calculating attorney fees under a "lodestar" approach are (1) the number of hours spent in various legal activities by the individual attorneys, (2) the reasonable hourly rate for the individual attorneys, (3) the contingent nature of success, and (4) the quality of the attorneys' work. *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312-13 (8th Cir. 1981); *see also Grunin*, 513 F.2d at 127. The starting point is multiplying attorneys' hours and typical hourly rates; only after such a calculation do other, less objective factors come into the equation. *Grunin*, 513 F.2d at 127.

In this case, because of the nationwide character of this litigation, counsel have been unable to present billing records relating only to work on the Nebraska case. That is completely understandable, given the nature of the case, but it still hampers a lodestar analysis. Counsel have produced

---

[1] The *available* settlement funds are an appropriate measure of the benefit accrued by the class members, regardless of whether the full measure of that sum is actually claimed. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980). And including attorney fees, expenses, and administrative costs in the value of the common fund is also appropriate, as the award to the class members and the agreement on fees and costs is a "package deal." See *Johnston*, 83 F.3d at 245-46.

- 6 -

records summarizing their fees and costs, nationally. *See* filings 38-10 at 7 and 38-11 at 10. And upon the Court's request for further documentation, counsel have provided the Court with lists of the hours spent on this litigation through June 2011, broken down by employee and defendant, and the litigation expenses incurred by the different law firms representing the settlement class. *See* filings 42-1, 42-2, and 42-3. Counsel has also submitted some information regarding the "historic hourly rates" charged during the relevant time frames. Filing 42 at 3.

But on this record, the Court cannot calculate a "lodestar," even on a national basis. The "reasonable hourly rate" for purposes of a lodestar analysis is the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad,* 643 F.2d at 1313. Generally, attorneys have been required to substantiate their fee claims by providing detailed records relating to standard hourly rates for themselves or their firm and a complete breakdown of who spent what time in what endeavors. *Id.*; *see also Grunin,* 513 F.2d at 127. Here, the Court has some information about the highest rates charged, and the averages—but an average rate including everyone from lead partners to paralegals does not provide the Court with a basis for determining a "reasonable hourly rate." Simply put, without a "lodestar," there can be no lodestar cross-check.

This is not to be critical of counsel, for producing the information available to them, or to question their compensation or skill. It is simply to say that the lodestar approach requires particular data, and that data is missing here. But the Court emphasizes that a lodestar analysis is not necessary if the fee does not seem excessive as a percentage of the recovery. *See Petrovic,* 200 F.3d at 1157. As discussed above, the request for fees and expenses at issue here is not excessive. And while the evidence presented does not permit a full lodestar analysis, it does demonstrate that counsel have, on a national scale, invested a great deal of time and money into this litigation. So to that extent, the evidence supports the settlement class counsels' fee request. The Court also notes that the potential award of fees and expenses was disclosed in the notices to class members, including the amount, and no objections were received. *See In re U.S. Bancorp. Litig.,* 291 F.3d at 1038.

Based upon the Court's percentage-of-the-benefit evaluation, as supported by documentation of counsels' efforts on behalf of the settlement class, the Court will award the requested fees and expenses. The settlement agreement provides for payment of the award into a particular interest-bearing U.S. Bank escrow account that settlement class counsel represent to be a qualified settlement fund within the meaning of Treas. Reg. § 1.468B,

with the Garretson Firm Resolution Group (GFRG) as fund administrator, consistent with the terms of an escrow agreement entered into on August 26, 2011, among settlement class counsel, U.S. Bank, and GFRG. The Court will order payment of the award into that account on those terms.

### INCENTIVE AWARD

The settling defendants have agreed to pay incentive compensation to the class representatives, "reflecting their differing levels of involvement in this litigation": John Ramsey: $1,300, David C. Ostblom: $1,300, Devon Lewis: $3,200, and Gross-Wilkinson Ranch, Co.: $1,600. Filing 37 at 10. It is within the Court's discretion to award incentive awards to plaintiffs who serve as class representatives, considering the actions plaintiffs took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort plaintiffs expended in pursuing the litigation. *See In re U.S. Bancorp. Litig.*, 291 F.3d 1035.

There have been no objections to the incentive awards proposed here, and the Court finds that they are fair, reasonable, and properly based in the benefits to the class members generated by the litigation. The Court will award the requested incentives.

### RULE 54(B)

The parties have also suggested that the Court's order approving the settlement agreement incorporate language that would certify this as a final order and judgment, in the event that it is not a final judgment as to all claims presented in the action. *See* Fed. R. Civ. P. 54(b). The Court declines to do so, primarily because Rule 54(b) requires more consideration than the parties' suggestion permits. Before certifying a final judgment pursuant to Rule 54(b), the Court must undertake to weigh and examine the competing interests involved in a certification decision. *See Williams v. Cty. of Dakota,* 687 F.3d 1064, 1067-68 (8th Cir. 2012). It is difficult to see how the Court could do that when the Court would simply be entering boilerplate language with no clear understanding of what claims might be at issue. And perhaps more to the point, with this memorandum and order and an accompanying Fed. R. Civ. P. 58(a) judgment, the Court intends to enter final judgment as to all claims. If anything is inadvertently omitted, the Court would prefer to have that raised and dealt with directly.

Accordingly, the Court declines to enter a contingent finding of a final judgment pursuant to Rule 54(b). If, in fact, there are parties wishing to appeal who question the finality of the judgment, then they may move for Rule 54(b) certification at that time.

IT IS ORDERED:

1. The plaintiffs' Motion for Final Approval of Class-Action Settlement and for Award of Attorneys' Fees and Expenses to Settlement Class Counsel and Incentive Compensation to Class Representatives (filing 36) is granted.
2. The settlement agreement is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the settlement agreement.
3. Class members shall be permitted to make claims for the benefits described in the settlement agreement, subject to the conditions and limitations stated in this memorandum and order.
4. The certification of the settlement class, under Rules 23(b)(3) and 23(e), solely for settlement purposes, is confirmed.
5. After the date upon which this order and accompanying judgment have become final, and all periods during which any party to the settlement agreement may exercise a right of withdrawal have expired, whichever is later (hereinafter, "the effective date"), the settling defendants and all other released parties, including, without limitation, the right-of-way providers listed in Exhibit L to the settlement agreement, shall be released from any and all settlement claims that any class member (and all successors in interest) had, has, or may have in the future, against the settling defendants or any other released party. This release may be enforced by any released party. The right-of-way providers listed in Exhibit L to the settlement agreement are:

> Union Pacific Corporation, Union Pacific Railroad Company, Southern Pacific Rail Corporation (together "Union Pacific"); BNSF Railway Company, Burlington Northern and Santa Fe Railway Company, The Atchison, Topeka and Santa Fe Railway Company, Burlington Northern Railroad Company (together "BNSF"); Nebraska Central Railroad Company; Chicago Pacific Corporation, and any of the predecessors-in-interest, predecessors-in-title, successors-in-interest, successors-in-title, members, partners, affiliates, lessees, subsidiaries, parents, assigns related entities, agencies, or officials of and any railroads or terminal railroads wholly owned or partially owned by each of the Right-of-Way Providers named above.

6. All settlement claims of any class member (and the successors in interest of all members of the settlement class) are dismissed. Upon the effective date, that dismissal shall be with prejudice.
7. Upon the effective date, the class members (and the successors in interest of all members of the settlement class) shall be barred and permanently enjoined from instituting, asserting, or prosecuting against a settling defendant or any other released party, including, without limitation, the right-of-way providers listed in Exhibit L to the settlement agreement, any and all settlement claims they have, had, or may have in the future, against a settling defendant or any other released party, except any claims for enforcement of a settlement agreement.
8. The various forms of the claim for landowner benefits and releases of claims (the "claim form"), and the telecommunications cable system easement deed, set forth as Exhibits G, J and J(1), and H, respectively, to the settlement agreement, are approved. In order to receive benefits under the settlement agreement, all class members must comply with the requirements for making and documenting a claim that are set forth in that settlement agreement.
9. All class members who are current landowners, regardless of whether they file a claim, are ordered to execute and deliver, after the effective date, a telecommunications cable system easement deed to the claims administrator in favor of each settling defendant whose telecommunications cable system was installed on covered property owned by the class member.
10. In order to receive benefits, each current landowner who submits a qualified claim must execute a telecommunications cable system easement deed.
11. Upon the effective date, the claims administrator shall be authorized under Fed. R. Civ. P. 70 to execute and deliver to each settling defendant a claims administrator telecommunications cable system easement deed, substantially in the form of Exhibit I to the settlement agreement, on behalf of all class members who are current landowners and who do not personally execute and deliver a telecommunications cable system easement deed. Any class member who is a current landowner and who does not file a claim may rely upon the claims administrator to execute and deliver to each settling defendant the claims administrator telecommunications cable system easement deed.
12. The claims administrator is appointed as attorney-in-fact for each class member who is a current landowner, with power and authority, upon the effective date, to execute and deliver a claims administrator

      telecommunications cable system easement deed, substantially in the form of Exhibit I to the settlement agreement, to the applicable settling defendant and to authorize such settling defendant to record such claims administrator telecommunications cable system easement deed as provided in Section IV.C.2 of the settlement agreement.

13. Upon the effective date, the settling defendants or settlement class counsel may, at their respective option and cost, file, record, and/or index the easement deed by court order in settlement of landowner action also entered on this date, or notice thereof, and any executed telecommunications cable system easement deed, on behalf of any class member, in the judgment or land records of the county in which the real estate is located as provided in Section IV.C.2 of the settlement agreement. The Court retains jurisdiction, as provided pursuant to section VIII.A.1.(n) of the settlement agreement, to enter supplemental orders and judgments to effectuate the recordation of any and all rights conveyed to the settling defendants under the settlement agreement.

14. The expenses of administering the settlement agreement shall be paid from the administrative account in the manner set forth in the settlement agreement.

15. Upon the effective date, the released parties shall be released by all class members from any and all claims, damages, costs, expenses, and other liabilities of every kind and nature whatsoever as a result of or in any way connected with the filing, recordation, or indexing of the easement deed by court order deed in settlement of landowner action, or notice thereof, or any telecommunications cable system easement deed, except claims to enforce the settlement agreement and/or this order.

16. Upon the effective date, the settlement agreement will provide the exclusive remedy for any and all settlement claims of settlement class members (and any successors in interest) against the settling defendants and any and all other released parties.

17. Upon the effective date, all claims against the class representatives, or their counsel or any of them, arising out of, relating to, or in connection with the action shall be released by the settling defendants and their counsel, and they shall be permanently enjoined and barred from instituting, asserting, or prosecuting any and all claims that the settling defendants or their counsel or any of them had, have, or may in the future have against the class representatives or their counsel, except claims to enforce the settlement agreement and/or this order.

18. Upon the effective date, all class members (and all successors in interest), whether or not they file a claim for landowner benefits, shall

be permanently enjoined and barred from instituting, asserting or prosecuting, either directly or as a class representative, any settlement claims.
19. The form of the notice of final approval of settlement, set forth as Exhibit F to the settlement agreement, is approved. Upon this order and accompanying judgment becoming final, the settlement administrator shall within thirty (30) days thereafter cause the notice of final approval package to be sent by United States Mail, first class postage prepaid, to all class members who have been identified, who requested copies, or who otherwise came to the claims administrator's attention.
20. No claims by the settling defendants against any right-of-way providers, insurers or other third parties for contribution, indemnification, or insurance benefits, are barred, released, or otherwise affected by the settlement agreement or this order and accompanying judgment.
21. Incentive awards to the class representatives are ordered in the following amounts: John Ramsey: $1,300; David C. Ostblom, $1,300; Devon Lewis, $3,200; and Gross-Wilkinson Ranch, Co.: $1,600.
22. The Court approves a fee-and-expense award of $1,107,000 to settlement class counsel.
23. Pursuant to the settlement agreement, the defendants shall deposit the fee-and-expense award into the interest-bearing escrow account—established as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B and as a trust under state law—with U.S. Bank in New York, New York, no later than ten (10) days after the date on which this order and accompanying judgment become final.
24. Any alleged or actual civil liability against the settling defendants for attorney fees arising out of the tort claims resolved by the settlement agreement is satisfied and extinguished through the settling defendants' payment of the fee-and-expense award.
25. Any interest earned on the escrow account shall be recognized as gross income of the qualified settlement fund.
26. Appointment of GFRG as the fund administrator for the escrow account is confirmed.
27. The escrow account shall be governed by the escrow agreement entered into as of August 26, 2011, among settlement class counsel, U.S. Bank, and GFRG.
28. The Court reserves its exclusive, general, and continuing jurisdiction over the parties to the settlement agreement, including defendants and all class members, as needed or appropriate in order to administer,

      supervise, implement, interpret, or enforce the settlement agreement in accordance with its terms, including the investment, conservation, protection of settlement funds prior to distribution, and distribution of settlement funds.

29.   A separate judgment will be entered.

Dated this 3rd day of December, 2012.

BY THE COURT:

_____
John M. Gerrard
United States District Judge
